SEALED

# UNITED STATES DISTRICT COURT

FILED

for the

Eastern District of California

OCT 2 4 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of )<br><br>4188 N Cornelia, 2536 S. Habitat, 4963 E. Garrett,<br>833/837 E. Lincoln, Fresno, CA;<br>2488 10th Street Sanger, CA )<br>)<br>)<br>)<br>) | Case No.<br><br>1: 17 SW - 0 0 3 3 7 ... EPG |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846, 841(a)(1) | Conspiracy to distribute and possess with intent to distribute a controlled substance |

The application is based on these facts:

## SEE AFFIDAVIT of HSI SA Andres Varela, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice ____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Andres Varela, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/24/17__

_____
*Judge's signature*

City and state: Fresno, California

Erica P. Grosjean, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

The **SUBJECT PREMISES 1** to be searched pursuant to the requested search warrant is described as follow:

### The residence Located at 4188 N Cornelia Avenue,  Fresno CA

The residence identified as 4188 N. Cornelia Avenue Fresno CA, is described as a single story duplex located on the east side of   N. Cornelia The residence is Tan in color with brown trim.  The front door is brown in color which faces west.

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.

ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT A-2

The **SUBJECT PREMISES 2** to be searched pursuant to the requested search warrant is described as follow:

### The residence Located at 2488 10TH Street #114 Sanger, CA

The residence identified as 2488 10TH $^{Apt}$ 114 Sanger CA, is described as a two story apartment the residence is Tan in color with red trim.  The front door is red in color and the numbers 144 are in black next to the door.

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.


ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT A-3

The **SUBJECT PREMISES 3** to be searched pursuant to the requested search warrant is described as follow:

### The residence located at 2536  S. Habitat  Avenue, Fresno, CA

The residence identified as 2536 S. Habitat Avenue, Fresno, CA, is described as a single family, single story residence the residence is cream in color with blue trim.  The front door has a white security screen on it which faces east.

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.

ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT A-4

The **SUBJECT PREMISES 4** to be searched pursuant to the requested search warrant is described as follow:

### The residence located at 4963 E. Garrett Avenue, Fresno, CA

The residence identified as 4963 E. Garrett Avenue Fresno CA, is described as a single family, single story residence located on the north side of Garrett the residence is brown in color with a gray composite roof.  The front door has a tan security screen on it which faces south.

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.

ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT A-5

The **SUBJECT PREMISES 5** to be searched pursuant to the requested search warrant is described as follow:

### The residence located at 833/837 E Lincoln Avenue, Fresno, CA

The residence identified as 833/837 E Lincoln Avenue, Fresno, CA, is described as a multi-structure property located on the south side of E Lincoln Avenue between S East Avenue and S Cherry Avenue in Fresno, California. A black-colored iron fence with two gates surrounds the north side of the property. The premises consists of two residences, "833", which is the northernmost structure on the property. "833" is a single story residence comprised of yellow-colored stucco with dark brown trim and a red colored tile roof. "833" has an attached white colored two-car garage to the east of the front door. The front door of "833" is brown colored and faces north. "837" is the southernmost structure on the property. "837" is a single story residence, which is green colored with white trim with a gray colored composite roof. There is a long drive way on the west side of the property which leads to the rear residence, "837"". At the end of the driveway, is a carport, which is to the west of "837". There are two mailboxes outside the front fence/gate of the premises, labeled "833" and "837".

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.

ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT B

Items to be Seized:

Items tending to establish and document the transportation, distribution and/or possession with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and 846:

1.    Controlled substances, in particular crystal methamphetamine , and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

2.    Evidence of potential co-conspirators, including books, records, correspondence, narcotic customers lists, narcotic suppliers lists, ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts, letters and memoranda of agreements between potential co-conspirators, formulas, receipts, phone records, phone books, address books, notations and other papers, and any files relating to the transporting, ordering, purchasing, or distributing of controlled substances.

3.    Indicia of occupancy, residency, and/or ownership of the previously described property, premises, or vehicles, and any other property, premises, or vehicles, including utility and telephone bills, canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, envelopes, registration, receipts, and keys which tend to show the identities of the occupants, residents, and/or owners.

4.    Photographs and/or videotapes, in particular photographs and/or videotapes of potential co-conspirators and their criminal associates, assets, and/or controlled substances, along with personal address lists, and other documents with the names and telephone numbers

of potential co-conspirators.

5.      Evidence of records relating to the use of and accumulation of proceeds derived from the sale of marijuana or any other illegal controlled substances, as well as the acquisition of property obtained from drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money obtained from drug sales, including precious metals, jewelry, records of large purchases, receipts, keys and other items tending to establish dominion and control of the location, canceled checks, bank records, credit card records, wire transfers, wire transfer receipts, cashier's checks, cashier's check receipts, addressed mail, express delivery receipts/envelopes, utility company receipts, rent receipts, income tax returns, money drafts, money orders, and their receipts. Other financial records including expenses incurred in obtaining the equipment and items necessary for the transportation and/or distribution of controlled substances, income derived from the sales of controlled substances, as well as records of legitimate income or lack thereof, and general living expenses.

6.      Financial records of persons in control of the property, premises, or vehicles, including bank statements, bank receipts, passbooks, bank checks, money market or similar accounts, money drafts, letters of credit, payroll documents, employer information, income and expense records, Federal and State income tax returns, money orders, cashier's checks, loan applications, credit card records, safe deposit box and records, acquisitions, notes, and records reflecting vehicles, aircraft or vessels owned, purchased, sold or leased.

7.      Devices used to communicate with other individuals involved in the transportation and/or

distribution of marijuana or any other controlled substance, including cellular telephones, mobile telephones, satellite telephones, phone answering machines, telephone answering machine tapes, two-way radios, beepers or pagers, computers, two-way digital pagers, and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts or literature describing the same. The cellular telephones, satellite telephones, pagers, personal telephone and address books, papers, and/or other items reflecting names, addresses and/or telephone numbers of associates in narcotics activities.

8. Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

9. United States currency in excess of $2,000 and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

10. Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

11. Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors,

razor blades, plastic bags, heat-sealing devices and cutting agents.

12.   Documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, and telephone bills.

13.   Firearms, ammunition, silencers, and other dangerous weapons.

## AFFIDAVIT OF SA ANDRES VARELA

I, Andres Varela, Special Agent, Homeland Security Investigations, United States Department of Homeland Security, being duly sworn, do depose and state:

## I.    **INTRODUCTION**

1.      This affidavit is in support of a search and seizure warrant for 4188 N Cornelia Avenue, Fresno, California 93722, (**SUBJECT PREMISES 1**), 2488 10th Street, Apt 114, Sanger, California 93657 (**SUBJECT PREMISES 2**), 2536 N Habitat Avenue, Fresno, California 93706 (**SUBJECT PREMISES 3**), 4963 E. Garrett Avenue, Fresno, California 93725 (**SUBJECT PREMISES 4**) and 833/837 E Lincoln Avenue, Fresno, California 93725 (**SUBJECT PREMISES 5**). These locations, collectively, are referred to for the purposes of this affidavit as **THE SUBJECT PREMISES**. This affidavit and application is in support of providing probable cause for the search of **THE SUBJECT PREMISES** for evidence of violations of Title 21, United States Code, Sections 846, 841(a)(1), conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine and marijuana and distribution and possession with intent to distribute methamphetamine, cocaine and marijuana, further described in Attachment B, which is attached hereto and incorporated by reference. **THE SUBJECT PREMISES** are described more fully in Attachment A-1 through A-5, which are also attached hereto and incorporated by reference.

### **Affiant's Background**

2.      I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement /Homeland Security Investigations ("HSI"), presently assigned to the Office of the Resident Agent in Charge, Fresno, California ("HSI Fresno"). I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).   I have been employed as an HSI Special Agent (SA) for approximately six and a half years. As part of my daily duties as an HSI SA, I investigate narcotics offenses in violation of 21 USC § 841(a) (1). I have received training in the area of federal narcotic offenses and am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator and Immigration and Customs Enforcement Special Agent Training Programs. In addition to my training at FLETC, I received my Bachelor's Degree in International Business from Barry University in Miami Shores, FL. I was assigned as a task force agent

AFFIDAVIT                                                          1

1  to the Central Valley Marijuana Investigation Team (CVMIT) investigate drug trafficking, drug

2  manufacturing and the activities of drug trafficking organizations from January 2014 through October

3  2014. I have participated in numerous investigations including, gangs, drugs, firearms, violent crimes,

4  and others. My law enforcement experience includes conducting physical surveillance, interviewing

5  witnesses, victims and suspects, writing affidavits for and executing search warrants, handling

6  confidential informants, analyzing phone records obtained from subpoenas, search warrants, pen

7  registers, trap and trace devices, and collecting and processing evidence. Through my training and

8  experience as a law enforcement officer I have become familiar with the gang sub-culture and drug sub-

9  culture including knowledge of controlled substance and firearms violations.

10       3.       I am familiar with narcotics traffickers' methods of operation including the distribution,

11  storage, manufacturing, and transportation of narcotics and the collection of money proceeds of

12  narcotics trafficking.  I have assisted on the execution of several federal and state narcotics search

13  warrants that resulted in the arrest of suspects and seizure of narcotics.

14       4.       I have participated in narcotics investigations either as a case agent or in a supporting

15  role.  I have debriefed defendants, informants, and witnesses who had personal knowledge regarding

16  narcotics trafficking organizations.  Additionally, I have participated in many aspects of drug

17  investigations including, but not limited to, undercover operations, conducting physical and electronic

18  surveillance, and arrests.  I have conducted and been involved in numerous investigations regarding the

19  unlawful manufacture, possession, distribution, and transportation of controlled substances, as well as

20  conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§

21  841(a)(1), 841(c)(2), 843, and 846.

22       5.       During previous investigations, I have monitored, conducted wire room supervision, and

23  conducted surveillance on previous Federal wire intercepts.  During these previous investigations, I have

24  had the opportunity to monitor, listen to, review transcripts or "line sheets" or monitor logs prepared by

25  linguists and/or otherwise discussed with linguist the content of intercepted drug related conversations.

26  Most of these intercepted communications contained coded language used by the participants to cloak

27  their intentions and thwart law enforcement.  During these investigations, I have obtained information

28  from other law enforcement officers who are familiar with intercepted coded language as well as

AFFIDAVIT                                    2

confidential sources and defendants who were intercepted and/or arrested during wire intercept investigation. Information from these sources has confirmed my understanding of intercepted coded language.

6.      I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the DEA, HSI, FBI, IRS, the Fresno Police Department (FPD) and other law enforcement agencies; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another DEA or law enforcement agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details or facts of every aspect of the investigation. Facts not set forth herein, or in the attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application and affidavit.

7.      I know based on my training and experience and from conversations I have had with other narcotics investigators, specifically in regards to crystal methamphetamine and residences used by crystal methamphetamine distributors, that items of evidentiary value besides crystal methamphetamine, are often found at these locations. These items include, but are not limited to ledgers, journals, receipts, phone records, rental agreements or leases for vehicles or real property, vehicle registrations, grant deeds, photographs of potential co-conspirators, or other narcotics storage, letters and other items associated with personal correspondence that can contain handwritten statements indicating amounts of money. I also know that these locations will often contain ledgers of drug sales as well as other commodities such as gold, jewelry and/or foreign currency that can be used as bartering elements or proceeds from a previous crystal methamphetamine sale. I also know that these locations will often contain items in order to allow the crystal methamphetamine distributors to protect their investment

AFFIDAVIT                                                3

from other narcotics distributors, home invaders or law enforcement such as firearms, silencers or other dangerous weapons as well as security cameras, recording equipment, police scanners and other types of counter-intrusion, security or law enforcement detection equipment. I also know that crystal methamphetamine distributors will often contain cell phones, hardline telephones, radios and other communication equipment that is used by the drug traffickers to communicate with customers, sources of supply, workers, water companies or other entities and/or co-conspirators involved in the cultivation operation.

## II.    SUMMARY OF INVESTIGATION

8.     In November 2016, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), Drug Enforcement Administration (DEA), Homeland Security Investigations (HSI), and the Federal Bureau of Investigation (FBI) began investigating Filibert CHAVEZ, Carlos MONTANO, Nicholas BOLANOS, and other co-conspirators in connection with a narcotics and firearms distribution network in Fresno, California. The investigation involved multiple controlled purchases of methamphetamine, utilizing CS1.

9.     On June 6, 2017, the Honorable Lawrence J. O'Neill authorized the interception of wire and electronic communications to and from 559-612-7006, utilized by MONTANO, herein referred to as Target Telephone 9 or TT9. Interceptions commenced on June 6, 2017, and were authorized for thirty days. On July 5, 2017, Judge O'Neill authorized the continued interception of wire and electronic communications over TT9.

10.     On July 21, 2017, the Honorable Lawrence J. O'Neill authorized the interception of wire and electronic communications to and from (559) 548- 2301, herein referred to as Target Telephone 10 or TT10, utilized by Nicholas BOLANOS, (559) 515-2710, herein referred to as Target Telephone 18 or TT18, utilized by Oscar BAZAN and (559) 321-6213, herein referred to as Target Telephone 19 or TT19, also utilized by BAZAN.  Interceptions commenced on July 21, 2017, for TT10, TT18, and TT19 and were authorized for thirty days. On August 25, 2017, Judge O'Neill authorized the continued interception of wire and electronic communication over TT19. The interceptions expired on September 24, 2017.

11.     On August 18, 2017, the Honorable Lawrence J. O'Neill authorized the interception of

AFFIDAVIT                                          4

1  wire communications to and from (559) 403-4515, herein referred to as Target Telephone 30 or TT30,

2  utilized by Miguel MANZO. The interceptions expired on September 16, 2017.

3       12.    On September 20, 2017, the Honorable Lawrence J. O'Neill authorized the interception

4  of wire communications to and from (559) 474-1776, herein referred to as Target Telephone 33 or

5  TT33, utilized by Ivan FIGUEROA. The interceptions began on September 20, 2017 and were

6  terminated on September 28, 2017 due to a lack of activity.

## III.    PROBABLE CAUSE

## SUBJECT PREMISES 1

### 4188 N Cornelia Avenue, Fresno, California – Location Where Narcotics were stored and residence of narcotics distributor Leonardo ORROSTIETA.

13       13.    4188 N Cornelia Avenue, Fresno, California (**SUBJECT PREMISES 1**) is believed to

14  be the residence of Leonardo ORROSTIETA. ORROSTIETA has been identified as a runner for

15  BAZAN. On April 18, 2017, ORROSTIETA drove BOLANOS to meet with MONTANO, so

16  MONTANO could supply CS 1 with one pound of crystal methamphetamine. Throughout the wire

17  intercepts, BAZAN instructed ORROSTIETA to deliver various quantities of crystal methamphetamine

18  and cocaine to customers. On August 9, 2017, during a traffic stop, ORROSTIETA was found in

19  possession of approximately 6.3 grams of cocaine, a digital scale with white residue, plastic baggies and

20  a loaded 9mm Beretta pistol.

21       14.    On April 18, 2017, CS 1[1] sent a text message to 323-397-8104 (TT8), a phone utilized by

22  MONTANO[2]. The text message requested MONTANO return a phone call to CS 1. According to CS

---

[1] CS 1 has been providing reliable information to HSI for roughly 4 years. This information has
led to several arrests and seizures and has been found to be reliable. CS 1 has been providing
information in exchange for immigration benefits and monetary compensation. CS 1 has several
convictions. In 1996, CS 1 was convicted for grand theft; 1999 petty theft; 2000 being in possession of
fraudulent identification documents; 2003 petty theft; 2004 willful cruelty to child; 2009 burglary; 2010
illegal reentry deported alien into the United States; and 2014 theft. CS 1 also was arrested in March
2013 for taking a vehicle without the owner's consent, and those charges were dismissed.

[2] On March 17, 2017, CS 1 was in the presence of MONTANO. Agents placed a telephone call
to TT8 and CS 1 observed MONTANO pick up a cellphone that was ringing, look at it and did not
answer. Agents also utilized CS 1 to conduct multiple recorded calls to TT8. CS 1 immediately

1, at 1:47 PM, MONTANO later called CS 1. CS 1 reported that during their conversation, CS 1 asked

MONTANO if he could provide one pound of methamphetamine. MONTANO said he could get the

methamphetamine for CS 1. CS 1 reported MONTANO told CS 1 the pound of methamphetamine

would cost $3,000.

15.   At approximately 2:46 PM, CS 1 made another phone call to MONTANO at TT8. This

call was recorded by supervising agents. MONTANO answered the call and told CS 1 that he was

getting the methamphetamine from a friend and after he got it, would bring it over to CS 1.

16.   Surveillance was established at 2429 S Preuss Avenue, Fresno, California, the residence

of MONTANO. At approximately 4:38 PM, a Chevy Silverado bearing California license plate

8C37315[3] arrived at the residence. Surveillance observed a Hispanic male go to the residence. At

approximately 4:50 PM, a Nissan Altima, associated with MONTANO, and the Silverado both left the

Preuss Avenue residence. Both vehicles were followed to 3261 E. Ventura Avenue, Fresno, California,

where the controlled purchase was arranged. Shortly after arriving, MONTANO sent a text message to

CS 1 stating he was at the meeting location.

17.   At approximately 5:09 PM, CS 1 arrived at the location. Surveillance agents observed

MONTANO exit the Nissan Altima. Surveillance agents also observed a subject believed to be

Nicholas BOLANOS exit the passenger side of the Silverado. Surveillance observed BOLANOS hand

MONTANO an unidentified object. Both BOLANOS and MONTANO entered the location. A few

minutes later BOLANOS exited the location and returned to the passenger seat of the Silverado.

18.   At approximately 5:11 PM, CS 1 purchased the one pound of crystal methamphetamine

from MONTANO in exchange for $3,000 in cash. The methamphetamine was wrapped in plastic wrap

and concealed in a plastic grocery bag. Following the controlled buy, MONTANO exited the location

and approached the passenger side of the Silverado, where BOLANOS had returned. MONTANO spent

approximately two minutes at the passenger side of the Silverado. Based on my training and experience

and knowledge of this investigation, I believe MONTANO was remitting payment to BOLANOS for the

_____

recognized the voice of MONTANO as the user of TT8.

[3] According to California Department of Motor vehicles, this vehicle was registered to Leonardo
ORROSTIETA at 5347 W Clinton Avenue, Fresno, California.

AFFIDAVIT                                6

1  methamphetamine MONTANO had just sold to CS 1.  Furthermore, I know it is common for drug

2  dealers to front drugs to another drug dealer, but wait nearby while the drugs are sold so they can

3  reclaim the proceeds of the sale promptly.  Following the meeting, MONTANO drove away in the

4  Altima. The Silverado also departed.  Fresno PD Major Narcotics followed the Silverado to Tacos

5  Tijuana Restaurant, 3838 E Ventura Avenue, Fresno, California.  Fresno PD Detective Sylvia Tucker

6  entered the restaurant and was able to positively identify the driver of the Silverado as Leonardo

7  ORROSTIETA based on ORROSTIETA's California driver's license photograph.

8        19.     CS 1 met with agents following the controlled purchase and turned over the plastic

9  grocery bag containing approximately one pound of crystal methamphetamine.  The substance was later

10 field tested positive for the presence of methamphetamine.

11       20.     Throughout the interceptions of TT18 and TT19, utilized by Oscar BAZAN, agents

12 intercepted numerous communications between BAZAN and ORROSTIETA which involved BAZAN

13 directing ORROSTIETA to deliver various quantities of cocaine and crystal methamphetamine to

14 BAZAN's customers.

15       21.     On July 27, 2017 at approximately 9:18 PM, BAZAN (TT18) received an incoming call

16 from a male BAZAN referred to as "BILLY".  BILLY asked BAZAN if BAZAN was home and

17 BAZAN said no. BAZAN asked BILLY what he needed and BILLY said he had "20". BAZAN told

18 BILLY to go by (to BAZAN's residence (at the time, BAZAN lived at 2307 W. Michigan, Fresno[4]) and

19 BAZAN was going to tell "Leo" to hook BILLY. BAZAN then placed an outgoing call to

20 ORROSTIETA. During the call, BAZAN told ORROSTIETA that BILLY was going to go by and to

21 give BILLY "2.0 tt for 20 cut". ORROSTIETA said ok and then BAZAN told ORROSTIETA there was

22 a Tupperware next to the microwave. Based on my training and experience and knowledge of this

23 investigation, I believe when "BILLY" told BAZAN that he had "20", BILLY was referring that he

24 wanted to purchase $20 worth of narcotics. I believe that when BAZAN told BILLY that he would tell

25 "Leo", BAZAN was referring to ORROSTIETA. I believe when BAZAN then instructed

26 ORROSTIETA to give BILLY "2.0 tt for 20 cut", BAZAN was instructing ORROSTIETA exactly how

27 _____

28 [4] Agents are aware this was BAZAN's residence based on surveillance and intercepted calls, as
   well as CA Department of Motor Vehicles records that indicate this is his residence.

AFFIDAVIT                                        7

1    much narcotics to provide BILLY with and the "cut" was in reference to a "cutting" agent, which is

2    typically used with cocaine.

3        22.    On August 9, 2017, agents conducted surveillance of ORROSTIETA. Agents observed

4    ORROSTIETA depart BAZAN's residence in Fresno driving the Silverado. Agents followed the

5    Silverado until it arrived near 4188 N Cornelia Ave in Fresno[5] (**SUBJECT PREMISES 1**).

6    Approximately fifty minutes later, agents observed ORROSTIETA exit **SUBJECT PREMISES 1** and

7    depart the area in the Silverado. Agents followed ORROSTIETA back to BAZAN's residence, where

8    ORROSTIETA changed vehicles and departed in a white colored BMW 750, bearing California license

9    plate 7SXY737[6]. Agents followed ORROSTIETA and the BMW to the Madera, California area where

10   Madera PD Officer Ryan Vasquez conducted a traffic enforcement stop of the BMW for tinted

11   windows.

12       23.    During the stop, Officer Vasquez utilized his K-9 partner "Uno" to conduct a sniff of the

13   exterior of the BMW. "Uno" alerted to the odor of narcotics in the vehicle. Officer Vasquez then

14   conducted a further search of the BMW and ultimately located a loaded Berretta 9mm pistol,

15   approximately 6.3 grams of suspected cocaine, several plastic baggies and an electronic digital scale.

16   ORROSTIETA was arrested on state narcotics violations and ultimately released from custody.

17       24.    On August 31, 2017, Fresno PD Detective Rey Medeles conducted surveillance of

18   **SUBJECT PREMISES 1**. During the surveillance, Detective Medeles observed ORROSTIETA's

19   Silverado parked in front of **SUBJECT PREMISES 1**. Detective Medeles also observed

20   ORROSTIETA exit the front door of **SUBJECT PREMISES 1**, place a box into the truck bed of the

21   Silverado and walk back into **SUBJECT PREMISES 1**. ORROSTIETA then exited the front door of

22   **SUBJECT PREMISES 1**, entered the Silverado and departed the area.

23       25.    On September 4, 2017, BAZAN (TT19) placed an outgoing call to ORROSTIETA.

24   During the call, BAZAN asked ORROSTIETA what he was doing and ORROSTIETA said "right here

25   at the house". BAZAN asked ORROSTIETA if he was available and ORROSTIETA said yes. BAZAN

---

26       [5] Initially agents thought the address to SUBJECT PREMISES 1, was 4188 Swift, which was

27   incorrect.

    [6] According to California DMV records, the BMW is registered to Leonardo ORROSTIETA at

28   5347 W Clinton Avenue, Fresno, California.

AFFIDAVIT            8

1  instructed ORROSTIETA to take a "hundo" right now and BAZAN would text ORROSTIETA the

2  address. ORROSTIETA said ok. Agents did not intercept a follow-up text message between BAZAN

3  and ORROSTIETA. Approximately 30 minutes later, ORROSTIETA called BAZAN (TT19) and asked

4  BAZAN what was up with the "other one", BAZAN asked for clarification and ORROSTIETA told

5  BAZAN that he thought BAZAN had "another one". BAZAN agreed and then said that "he" (unknown

6  third party) wanted it by 99 and Jensen. ORROSTIETA told BAZAN that he would be waiting around

7  and to let ORROSTIETA when the third party was ready. Based on my training and experience and

8  knowledge of this investigation, I believe when BAZAN instructed ORROSTIETA to grab a "hundo"

9  right now, BAZAN was telling ORROSTIETA to deliver $100 worth of narcotics to a customer at an

10  address that BAZAN was going to send to ORROSTIETA via text message. I believe the follow up call

11  between ORROSTIETA and BAZAN involved ORROSTIETA asking BAZAN about an additional

12  customer who wanted to purchase narcotics.

13       26.    On October 4, 2017, Fresno PD Detectives conducted surveillance of **SUBJECT**

14  **PREMISES 1**. During the surveillance, Detective Medeles again observed ORROSTIETA exit the front

15  door of **SUBJECT PREMISES 1** and depart the area in the Silverado. Detective Medeles also observed

16  a white colored vehicle which was covered with a "car cover". A portion of the vehicle was exposed and

17  Detective Medeles stated the vehicle resembled the aforementioned BMW.

18       27.    The address (**SUBJECT PREMISES 1)** related to ORROSTIETA that I am requesting

19  to search is not listed with the Department of Motor Vehicles or not listed as their most current address.

20  ORROSTIETA's listed with the DMV is 5347 W Clinton Avenue, Fresno, California. I am aware based

21  on my training and experience that other criminals often do not update their current address with the

22  Department of Motor Vehicles. This is done, in part, as a way to conceal their location from law

23  enforcement.  Based on the above facts, I believe ORROSTIETA resides at **SUBJECT PREMISES 1**.

24

25

26

27

28

**SUBJECT PREMISES 2**

**2488 10ᵗʰ Street, Apt 114, Sanger, California 93657 – Residence of Michael MARTINEZ,**

**Who Delivers Narcotics for BAZAN**

28.     2488 10ᵀᴴ Street, Apt 114, Sanger, California (**SUBJECT PREMISES 2**) is believed to be the residence of Michael MARTINEZ. Michael MARTINEZ was identified as a runner for Oscar BAZAN. Agents intercepted multiple calls that involved MARTINEZ delivering narcotics at the direction of BAZAN. On August 26, 2017, Miguel MANZO picked up a brown box from Ivan FIGUEROA, which based on intercepted communications, agents believe contained one kilogram of cocaine. MANZO then met with MARTINEZ and provided with the box which MARTINEZ ultimately delivered to BAZAN at BAZAN's residence.

29.     On August 26, 2017, at approximately 1:41 PM, Miguel MANZO (TT30) received an incoming call from BAZAN (TT18). During the call, MANZO asked BAZAN if BAZAN needed "that" and BAZAN said yes. MANZO said MANZO would come over to BAZAN's house in approximately forty-five minutes.

30.     At approximately 1:55 PM, MANZO (TT30) placed an outgoing call to Ivan FIGUEROA (TT33). During the call, FIGUEROA asked MANZO where MANZO was at. MANZO said MANZO was on the way and FIGUEROA said FIGUEROA was on the way as well. According to tracker data, MANZO's accord was travelling northbound on California Highway 99 towards Madera. At approximately 2:08 PM, MANZO arrived at FIGUEROA's residence and called FIGUEROA. During the call, FIGUEROA said FIGUEROA was on the way and would arrive in fifteen to twenty minutes. At approximately 2:41 PM, FIGUEROA called MANZO and told MANZO that FIGUEROA would arrive in five minutes.

31.     At approximately 2:38 PM, MANZO (TT30) received an incoming call from BAZAN (TT19). During the call, MANZO asked who it was. BAZAN said this was BAZAN's other line, because BAZAN let his "boy" (Michael MARTINEZ) who does "errands" for BAZAN, take BAZAN's other phone. MANZO said MANZO would be at BAZAN'S in 20 minutes. BAZAN told MANZO to

1    wait a little bit and MANZO said MANZO wanted to leave that shit there. BAZAN said for MANZO to

2    meet BAZAN's boy (Michael MARTINEZ) then and he (Michael MARTINEZ) would bring it.

3    MANZO said no because MANZO wanted to get "nine of them from there". BAZAN said oh ok.

4    BAZAN told MANZO that BAZAN was waiting on a client who was supposed to arrive in ten minutes.

5    Based on my training and experience and conversations with other experience narcotics investigators, I

6    believe when MANZO said that MANZO wanted to get "nine of them from there", MANZO was

7    referring to obtaining nine ounces of the kilogram of cocaine that MANZO was going to obtain for

8    BAZAN.

9       32.     At approximately 2:42 PM, DEA TFO Dean Cardinale was monitoring the pole camera

10    installed near FIGUEROA's residence and observed MANZO's ACCORD arrive in front of the

11    residence. A short while later, the COROLLA arrived and FIGUEROA exited the driver door.

12    FIGUEROA and MANZO greeted each other and FIGUEROA removed a brown cardboard box out of

13    the backseat of the COROLLA. FIGUEROA handed the box to MANZO who placed in the ACCORD

14    and departed the area. FIGUEROA also removed a large plastic bag from the COROLLA and walked

15    towards the front door of the residence.

16       33.     At approximately 3:30 PM, agents established surveillance near the intersection of Shaw

17    and Fresno Avenue in Fresno, California, where based on intercepted calls, MANZO was supposed to

18    meet with the male who was working for BAZAN. BAZAN told MANZO the male would be driving a

19    blue colored, four-door Chevrolet.

20       34.     At approximately 3:32 PM, TFO Cardinale observed MANZO arrive at the Mobil gas

21    station, located on the northwest corner of Shaw Avenue and Fresno Avenue in the Accord. MANZO

22    handed the aforementioned box to a male resembling Michael MARTINEZ [7], who placed the box in the

23    back seat of a blue colored Chevrolet Impala (IMPALA), bearing California license plate 6AZN774[8] .

24    MANZO departed the area in the Accord and was not followed. Michael MARTINEZ departed the area

25
26         [7] A California DMV photograph of Michael MARTINEZ was shown to CARDINALE who stated the male who met with MANZO resembled Michael MARTINEZ.

27
28         [8] According to California DMV records, the Impala is registered to Michael MARTINEZ at 2488 10th Street, Apt 114, Sanger, California. On September 28, 2017, I observed the Impala parked across the street from BAZAN's residence with a male in the driver's seat. I compared the male to Michael MARTINEZ's DMV photograph and confirmed the male was Michael MARTINEZ.

1  in the IMPALA and was followed by agents.

2      35.    At approximately 3:51 PM, agents observed the IMAPALA arrive at BAZAN's residence

3  through a pole camera installed nearby. Michael MARTINEZ exited the IMPALA and entered the

4  residence. Michael MARTINEZ then exited the residence and retrieved an unknown object from the

5  back seat of the IMPALA. Almost simultaneously, BAZAN exited the residence and retrieved the brown

6  box from the back seat of the IMPALA and walked back into the residence.

7      36.    Based on the aforementioned telephone calls and knowledge of this investigation, I

8  believe the brown cardboard box provided that MANZO obtained from FIGUEROA contained at least

9  one kilogram of cocaine. I believe MANZO provided the box to Michael MARTINEZ at BAZAN's

10  direction and Michael MARTINEZ ultimately delivered the box to BAZAN.

11      37.    On September 28, 2017, DEA SA Joshua Copeland drove to the apartment complex

12  where **SUBJECT PREMISES 2** is located and observed the Impala parked in a parking stall at the

13  apartment complex. According to California DMV records, Michael MARTINEZ's listed address is

14  **SUBJECT PREMISES 2**.  On October 18, 2017, Sanger Police officers went to **SUBJECT**

15  **PREMISES 2**, and contacted a male who identified himself as "Michael Martinez."  Officers

16  recognized MARTINEZ from his California DMV photograph. MARTINEZ said he lived there with his

17  parents and his child.  Based on the above information, I believe Michael MARTINEZ resides at

18  **SUBJECT PREMISES 2**.

19

20  **SUBJECT PREMISES 3**

21  **2536 N Habitat Avenue, Fresno, California 93706 – Residence of Miguel MANZO, Who**

22  **Engages in Drug Trafficking**

23      38.    2536 N Habitat Avenue, Fresno, California (**SUBJECT PREMISES 3**) is the residence

24  of Miguel MANZO. Miguel MANZO was identified as a crystal methamphetamine and cocaine SOS for

25  Oscar BAZAN during the interception of TT18 and TT19, utilized by BAZAN.  MANZO was the target

26  of a wiretap investigation. In 2014, MANZO was convicted of possession with intent to distribute

27  methamphetamine in the Eastern District of California (Case No. 1:12-CR-00320 AWI-BAM) and was

28  sentenced to 57 months of incarceration.  MANZO was released from the custody of the Bureau of

AFFIDAVIT               12

1   Prisons on July 10, 2017, and is currently on supervised release. MANZO's supervised release address is

2   2536 S. Habitat Avenue, Fresno, California, **SUBJECT PREMISES 3**.

3        39.    On August 5, 2017, a brief surveillance was conducted at 2536 N Habitat Avenue,

4   Fresno, California (**SUBJECT PREMISES 3**). Agents observed a 2017 white colored Honda Accord

5   bearing California license plate 7XMC522[9] parked at **SUBJECT PREMISES 3.**

6        40.    On August 8, 2017, at approximately 10:37 AM, agents intercepted a telephone call

7   between MANZO and BAZAN that indicated MANZO was going to BAZAN's residence. At

8   approximately 12:30 PM, I observed MANZO exit the Habitat Avenue residence, enter the Accord and

9   depart the area.

10        41.    On August 10, 2017, the Honorable Sheila K. Oberto, authorized a tracking warrant for a

11   2017 Honda Accord, bearing California license plate 7XMC522, which is registered to and utilized by

12   Miguel MANZO. The warrant was authorized for 45 days and expired on September 25, 2017. On

13   September 27, 2017, the Honorable Stanley A. Boone, re-authorized a tracking warrant for an additional

14   45 days on MANZO's Accord. According to tracker data, from August 11, 2017 through September 25,

15   2017, the Accord[10] was consistently located at **SUBJECT PREMISES 3** overnight.

16        42.    On August 11, 2017 at approximately 5:33 PM, BAZAN (TT18) placed an outgoing call

17   to MANZO (TT30). During the call, MANZO told BAZAN that MANZO was on the way to get "that".

18   BAZAN asked MANZO what kind it was, and MANZO asked BAZAN if BAZAN wanted the

19   "Honda". BAZAN said yes that BAZAN liked the "Hondas" [11].

20

21   ───────────

     [9] According to California DMV records, the Accord is registered to Miguel MANZO at

22   **SUBJECT PREMISES 3.**

     [10] On September 29, 2017, MANZO was involved in a traffic accident, which resulted in his

23   hospitalization. The Accord suffered extensive damage and is now located at a tow yard in Madera. The

24   tracking device was removed on October 3, 2017.

     [11] On August 29, 2017, agents executed a federal search at Gonzalo MANZO JR's (a relative of

25   Miguel MANZO) residence and located approximately 33 grams of crystal methamphetamine, 122

grams of cocaine, digital scales and plastic baggies. Agents also located wrappings that contained a

26   small amount of a white powdery substance which tested a presumptive positive for cocaine. The

wrappings contained a "Honda" motorcycle logo. Additionally, on August 17, 2017, ATF agents in

27   Oregon, conducted a controlled buy of approximately 1 kilogram of cocaine from Gonzalo MANZO JR

(negotiated and sold by MANZO JR, delivered by another person)  The methamphetamine was wrapped

28   in packaging that had a "Honda" motorcycle logo on it.

AFFIDAVIT           13

43.   According to tracker data, at approximately 6:36 PM, MANZO's Accord departed **SUBJECT PREMISES 4** and travelled directly to FIGUEROA's residence. The Accord arrived at approximately 7:03 PM and remained at FIGUEROA's residence for approximately ten minutes. The Accord travelled directly to BAZAN's residence.

44.   During this time, agents were monitoring a pole camera affixed near BAZAN's residence. At approximately 7:36 PM, agents observed the Accord arrive at BAZAN's residence. At approximately 7:41 PM, MANZO exited the Accord and stood in the driveway. A minute later, BAZAN exited the residence and greeted MANZO in the driveway. MANZO and BAZAN opened the trunk of the Accord, BAZAN retrieved a large clear plastic bag from the trunk of the Accord and BAZAN and MANZO walked towards the door of the residence. The bag appeared to be weighted down and contained what appeared to be a large white colored object, consistent with the size of a kilogram of cocaine.

45.   Based on my training and experience, knowledge of this investigation and conversations with other experienced narcotics investigators, I believe when MANZO and BAZAN say "Honda", it is in reference to a specific brand of cocaine. Therefore, based on the color and size of the object in the plastic bag, I believe MANZO delivered at least one kilogram of cocaine to BAZAN in the above transaction.

46.   On August 28, 2017, at approximately 1:29 PM, MANZO (TT30) placed an outgoing call to BAZAN (TT19). During the call, BAZAN asked if MANZO had any "cri-cri". MANZO said yes. BAZAN asked MANZO to bring BAZAN "two of them". MANZO said MANZO would go right now. BAZAN asked how long until MANZO would arrive. MANZO said he just needed to shower and would call BAZAN when MANZO was on the way.

47.   Based on my training and experience and knowledge of this investigation, I believe when BAZAN asked for "cri cri", BAZAN was referring to crystal methamphetamine. I also believe when BAZAN told MANZO to bring "two of them", BAZAN is referring to two pounds of crystal methamphetamine.

48.   At approximately 1:37 PM, MANZO (TT30) placed an outgoing call to BAZAN (TT19). During the call, MANZO asked when BAZAN would need the other one. BAZAN asked if the "soda"

AFFIDAVIT                                    14

1 or the other one and MANZO said soda. BAZAN said Wednesday, maybe tomorrow. MANZO said

2 okay and asked if BAZAN had the paper that MANZO could pick up and BAZAN said yes. MANZO

3 said all right and would go over.

4     49.    At approximately 4:21 PM, MANZO (TT30) placed an outgoing call to BAZAN (TT18).

5 During the call, MANZO asked if BAZAN was home. BAZAN said no and asked if MANZO was on

6 his way and MANZO said he was outside. BAZAN said BAZAN was going to open the door so

7 MANZO could just leave them there and then to come back when BAZAN calls MANZO to give

8 MANZO the paper. MANZO said MANZO wanted to pick up some paper to go get them. BAZAN

9 agreed and said to wait for BAZAN. MANZO asked if BAZAN had anything on BAZAN and BAZAN

10 said no only a couple of hundred, maybe 5. MANZO asked who was there to give it to him. BAZAN

11 said no that they were put away in a spot, but if MANZO was going to leave something, BAZAN could

12 open the door and call MANZO back when BAZAN got there. BAZAN said he was going to call back.

13 MANZO said MANZO would go get them. BAZAN acknowledged.

14     50.    Based on my training and experience and knowledge of this investigation, I know the

15 word "paper" is commonly used to refer to money. I believe MANZO wanted to pick up money from

16 BAZAN and then go purchase the two pounds of crystal methamphetamine. I believe that when

17 MANZO asked BAZAN if BAZAN had "anything" on BAZAN, MANZO was asking BAZAN if

18 BAZAN had any money on BAZAN's person. When BAZAN replied, only a couple of hundred, maybe

19 5, I believe BAZAN was referring to $500, which would not be enough to pay for two pounds of crystal

20 methamphetamine. Based on my training and experience and conversations with other experience

21 narcotics officer, I know the current wholesale price for a pound of crystal methamphetamine in the

22 central valley of California is approximately $2300 to $3500[12].

23     51.    At approximately 4:28 PM, MANZO (TT30) placed an outgoing call to Gonzalo

24 MANZO JR (GONZALO). During the call, MANZO said MANZO was on Clinton and Blackstone and

25 asked GONZALO if GONZALO had none of "the Windex". GONZALO asked "the what" and

26 MANZO said "the Windex". GONZALO then said "Windex, which ones?" and MANZO said those.

27 _____

28 [12] During this particular investigation, on July 27, 2017, Carlos MONTANO agreed to sell
BAZAN two pounds of crystal methamphetamine for $2,300 a pound.

GONZALO said yeah. MANZO said that MANZO needed to borrow two of them. GONZALO said to give GONZALO a little bit because GONZALO was going to get them right now.

52.     Based on my training and experience and conversations with other experience narcotics investigators, I believe when MANZO used the word "Windex", MANZO was using coded language or slang to refer to crystal methamphetamine. I also believe then MANZO said MANZO needed to borrow "two of them", MANZO was referring to obtaining two pounds of crystal methamphetamine from GONZALO without paying money up front.

53.     At approximately 4:30 PM, I observed MANZO's Accord depart BAZAN's residence through the pole camera installed nearby. At approximately 4:44 PM, agents established physical surveillance of MANZO's Accord near Golden State Highway and Olive Avenue in Fresno. Agents followed the Accord until it arrived back to BAZAN's residence at approximately 5:01 PM. At approximately 5:00 PM, MANZO (TT30) called BAZAN (TT18). During the call, BAZAN said BAZAN was inside the residence and MANZO told BAZAN to come outside. I reviewed the pole camera video and observed MANZO exit the Accord and walk towards the front door of BAZAN's residence. Agents were unable to determine what if anything was exchanged. At approximately 5:10 PM, MANZO departed the residence in the Accord.

54.     Agents followed the Accord northbound on California State Route (SR-99). At approximately 5:32 PM, the Accord arrived at FIGUEROA's residence. MANZO exited the Accord and walked towards the front door of the residence. MANZO met with an unknown individual in the driveway of the residence and returned to the Accord. MANZO did not appear to have anything in MANZO's hands[13]. At approximately 5:36 PM, MANZO departed the residence in the Accord.

55.     Agents followed the Accord southbound on SR-99. At approximately 6:00 PM, agents observed the Accord arrive at the Valero gas station at the intersection of Jensen Avenue and Elm Avenue in Fresno, California. Detective Fry observed the ACCORD pull alongside a two-door, blue-colored vehicle, later identified as a Honda Accord, bearing California license plate, 5GMD728[14].

---

[13] I reviewed the pole camera video of this meeting. The video skipped, which made it difficult to see clearly enough what, if anything, was exchanged.

[14] According to California DMV records, the vehicle is registered to Miguel MANZO at 728 S Jefferson Ave, Fresno, CA.

1   Detective Fry observed an unknown male, later identified as GONZALO[15], walk up to MANZO's

2   Accord and open the rear passenger side door. Agents were unable to determine what GONZALO did

3   after GONZALO opened the door of MANZO's Accord.

4        56.    At approximately 6:02 PM, MANZO departed the area in the Accord and went

5   northbound on California Highway 41. At that time, physical surveillance was terminated.

6        57.    At approximately 6:12 PM, MANZO (TT30) placed an outgoing call to BAZAN (TT18).

7   During the call, MANZO asked BAZAN what he was doing. BAZAN replied he was getting out of the

8   shower waiting for MANZO. MANZO replied he was outside and wanted BAZAN to get his ass

9   outside. BAZAN replied all right BAZAN would see MANZO right now, to give it to BAZAN's homie.

10  MANZO asked BAZAN to tell him to go outside as MANZO was pulling up already.

11       58.    At approximately 6:17 PM, the Accord arrived at BAZAN's residence. MANZO exited

12  the Accord carrying a dark colored plastic bag in MANZO's hand and walked towards the front door.

13  Almost instantly, MANZO returned to the Accord empty-handed and departed BAZAN's residence.

14  This was observed the pole camera installed near BAZAN's residence.

15       59.    Based on my training and experience and knowledge of this investigation, I believe the

16  above transaction involved BAZAN purchasing two pounds of crystal methamphetamine from MANZO,

17  which MANZO obtained from GONZALO. I believe GONZALO provided MANZO with the crystal

18  methamphetamine when they met at the Valero gas station just before MANZO drove to BAZAN's

19  residence. I believe the plastic bag MANZO walked towards BAZAN's residence with contained the

20  two pounds of crystal methamphetamine that BAZAN had requested earlier in the day.

21       60.    As mentioned above, on August 30, 2017, agents believe BAZAN sold two ounces of

22  crystal methamphetamine to Martin Montoya, which was ultimately seized on August 31, 2017. Based

23  on the above, I believe the two ounces of crystal methamphetamine sold by BAZAN to Montoya was

24  provided to BAZAN by MANZO on August 28, 2017.

25       61.    As noted above, **SUBJECT PREMISES 3** is MANZO's supervised release address.  As

26  such, MANZO is subject to visits by his probation officer, and potential searches of his residence.

27  _____

28  [15] I compared photographs of the male taken by Detective Fry during surveillance and compared
    it to a California DMV photograph of GONZALO and confirmed that the male was GONZALO.

AFFIDAVIT                              17

While this might tend to negate probable cause to believe evidence of MANZO's drug trafficking will be found at the residence, I don't believe that it actually does. I know based on my training and experience that it is not uncommon for individuals on probation, parole, supervised release, or other types of supervision to keep evidence of their criminal activity at the address they provide their parole, probation, supervised release or other supervision officer. In a drug trafficking case, the evidence might be of unexplained wealth, receipts placing the subject at a given place at a given time, pay-owe sheets, phone records and phones, and other items that might not appear to be contraband per se. Additionally, I also know that individuals engaged in criminal activity and on some type of supervisions will keep items of contraband per se, such as narcotics or narcotics sales paraphernalia at their residences but well hidden. In this case, agents intercepted a call between MANZO and a male, believed to be MANZO's father, who told MANZO to place some of MANZO's "nice shoes" and belts in the garage when MANZO's supervising US Probation Officer advised MANZO he was going to visit the residence. MANZO's father told MANZO if MANZO had any money to place it in a container in the kitchen or in one of the vehicles at the residence. The male further instructed MANZO to put on old boots and an old hat so it would appear that MANZO had been out working.

## SUBJECT PREMISES 4

### 4963 E. Garrett Avenue, Fresno, California 93725 – a location where narcotics and narcotics proceeds are stored

62.    4963 E. Garrett Avenue, Fresno, California (**SUBJECT PREMISES 4**) is believed to be the residence of Jonathan MANZO (JONATHAN). JONATHAN has been identified as a cousin of Miguel MANZO.

63.    On August 21, 2017 at approximately 7:34 PM, MANZO (TT30) received an incoming call from GONZALO. During the call, GONZALO asked MANZO if MANZO was going to get "something" and MANZO said "Yes" in a little bit. GONZALO then said however MANZO wanted, if not "David"[16] or "JONATHAN" has "it" there. MANZO said ok. Based on my training and experience and knowledge of this investigation, I know narcotics traffickers use terms such as "that" or "it" to refer

---

[16] Agents believe GONZALO is referring to David MANZO, GONZALO's younger brother and another cousin of Miguel MANZO.

to narcotics or narcotics proceeds. I believe when GONZALO asked MANZO if MANZO was going to grab "something", GONZALO was referring to an undetermined amount of narcotics. I also believe GONZALO was informing MANZO that "David" or "JONATHAN" were in possession of narcotics and MANZO could obtain the narcotics from either one of them.

64.     On August 23, 2017 at approximately 11:45 AM, MANZO (TT30) placed an outgoing call to (559) 369-3270, utilized by JONATHAN. During the call, MANZO asked JONATHAN where JONATHAN was at and JONATHAN said "my pad."  MANZO told JONATHAN that "GONZO" (GONZALO) told MANZO to go pick up some money. JONATHAN asked MANZO if it was yesterday and MANZO said yes. MANZO told JONATHAN that MANZO was going to pick it up and JONATHAN asked MANZO if MANZO would pick up "all of it" or just "some". JONATHAN then asked MANZO, "Whatever I picked up yesterday" and MANZO replied, "I think, yeah." JONATHAN said ok and to call when MANZO was outside. Based on my training and experience and knowledge of this investigation, I know the term "pad" is commonly used to refer to a house, therefore I believe JONATHAN was informing MANZO that JONATHAN was at JONATHAN's residence.

65.     According to tracker data, at approximately 11:57 AM, MANZO's Accord arrived at 4963 E. Garrett Avenue, Fresno, California, **SUBJECT PREMISES 4**. At approximately 12:05 AM, MANZO received an incoming call from JONATHAN. During the call, JONATHAN asked MANZO if MANZO had said "11 2 5" and MANZO said yeah. JONATHAN said ok. Based on my training and experience and knowledge of this investigation, I believe "11 2 5" is in reference to $11,250 that MANZO picked up from JONATHAN at **SUBJECT PREMISES 4**. According to tracker data, MANZO's Accord departed **SUBJECT PREMISES 4** at approximately 12:20 AM.

66.     On October 4, 2017, agents established surveillance at **SUBJECT PREMISES 4**. At approximately 2:17 PM, Fresno PD Detective Sylvia Anaya-Tucker observed JONATHAN arrive in the driveway of **SUBJECT PREMISES 4** driving a dark red colored Chevy S-10 pickup. Detective Anaya-Tucker was unable to determine if JONATHAN entered **SUBJECT PREMISES 4**. At that time surveillance was terminated. According to California DMV records, JONATHAN's listed address is **SUBJECT PREMISES 4**.

67.     Based on the above information, I believe JONATHAN resides at **SUBJECT**

**PREMISES 4** and is utilizing **SUBJECT PREMISES 4** to store narcotics and narcotics proceeds.

### SUBJECT PREMISES 5

### 837/833 E Lincoln Avenue, Fresno, California 93725 – "Stash House"

68.     837/833 E Lincoln Avenue, Fresno, California 93725 – **SUBJECT PREMISES 5** is believed to be utilized a stash house location for narcotics. According to Parcel Quest, the property address is 833 E Lincoln Avenue and the mailing address is 837 E Lincoln Avenue. The legal description of the property is 837/833 E Lincoln FR and is comprised of two residences. The property is believed to be the residence of Armando Cesar BARRAZA-Rios[17] (herein after BARRAZA) and has been involved in prior narcotics investigations as detailed below.  The property has a history related to drug trafficking dating back to at least 2014, and continuing through the present.

### Historical Information for SUBJECT PREMISES 5

69.     In March 2014, the Merced Multi-Agency Narcotics Task Force (MMNTF) contacted the Fresno Methamphetamine Task Force (FMTF) for assistance with an ongoing narcotics investigation that involved multiple wiretaps, including telephone number (559) 618-3484, utilized by Miguel MANZO and telephone number (559) 289-9591, utilized by Jose Esai MARTINEZ[18](herein referred to as JOSE ESAI).

70.     On March 24, 2014, FMTF agents established surveillance at **SUBJECT PREMISES 5** and observed a red Jeep depart the area. During surveillance, agents observed the Jeep travel to a nearby

---

[17] Cesar Armando BARRAZA-Rios was a target of a 2014 Fresno Methamphetamine Task Force (FMTF) investigation and was also a target subject in a previous DEA investigation. In 2011, BARRAZA provided his address to ICE officials at 837 E Lincoln Avenue. In 2012, I met with BARRAZA in an attempt to obtain information regarding narcotics trafficking in the Fresno area and BARRAZA again provided his address as 837 E. Lincoln Avenue. According to a DEA Confidential Source, BARRAZA is currently a known distributor of cocaine, crystal methamphetamine and heroin in the Fresno, California area.

[18] JOSE ESAI's listed address is 833 E Lincoln Avenue, Fresno, California. JOSE ESAI was the user of telephone number (619) 548-2301 (TT13) and is believed to be a source of supply (SOS) of crystal methamphetamine for Carlos MONTANO.  On June 13, 2017, Agents intercepted a call from Carlos MONTANO to JOSE ESAI. Based on my training and experience MONTANO was asking JOSE ESAI if JOSE ESAI had any crystal methamphetamine. JOSE ESAI told MONTANO he was "dry" (without supply) right now but was expecting some. On July 11, 2017, agents believe JOSE ESAI supplied MONTANO with one pound of crystal methamphetamine. JOSE ESAI's current telephone number is unknown. JOSE ESAI is BARRAZA's nephew.

AFFIDAVIT                                    20

1  bank which coincided with an intercepted text message sent by JOSE ESAI to an unknown male

2  indicating that JOSE ESAI was taking someone to the bank. The Jeep was followed back to **SUBJECT**

3  **PREMISES 5** from the bank. Agents later observed a Ford Mustang depart **SUBJECT PREMISES 5**

4  and followed it to the Madera, California area. A subsequent traffic enforcement stop was conducted of

5  the Mustang and JOSE ESAI was positively identified as one of the passengers in the Mustang. The

6  driver of the Mustang was identified as Leonel FIERRO[19].

7       71.    On April 26, 2014, FMTF agents established surveillance at **SUBJECT PREMISES 5.**

8  During surveillance, agents observed a Volkswagen Jetta and Toyota T-110 pickup arrive at **SUBJECT**

9  **PREMISES 5**. Agents observed the driver of the Jetta exit the vehicle and enter the rear structure of the

10  property. Agents then observed three unidentified male exit the rear structure and walk towards the Jetta.

11  The Jetta and Toyota pickup departed **SUBJECT PREMISES 5** in tandem and were continuously

12  followed by agents to a shopping center in Perris, California where they met with a marron Mazda

13  pickup. The Jetta and Mazda were then followed to a residence in Perris, California and then back to the

14  aforementioned parking lot. Agents ultimately followed the Toyota Pickup from the parking lot and onto

15  I-5 northbound. A traffic stop was conducted on the Toyota which resulted in the seizure of

16  approximately 23 pounds of crystal methamphetamine. Both occupants of the Toyota were arrested.

17

18                                  **Current Investigation**

19       72.    On September 1, 2017 at approximately 6:56 PM, Oscar BAZAN (TT19) placed an

20  outgoing call to telephone number (559)474-1999 (Target Telephone 36, TT36). Agents compared the

21  voice of the male who answered TT36 and determined the user of TT36 was Miguel MANZO. During

22  the call, BAZAN asked MANZO for some of the "other ones", "the peanuts". MANZO said ok.

23  BAZAN said even though that shit was nasty, it still "went". BAZAN then asked MANZO to "tell that

24  fool", BAZAN didn't want it to be that "plastic burnt tirery one". MANZO said those weren't his.

25  BAZAN told MANZO to bring "4 of them". MANZO said MANZO was going to call "his boy".

26

27       [19] On June 29, 2017, FIERRO was cited and released by Madera PD for being an unlicensed driver. FIERRO provided an address of 837 E Lincoln Avenue. The passenger of the vehicle, Jose

28  SALDIVAR was arrested for being in possession of approximately 12 grams of cocaine and a digital scale. SALDIVAR was also observed at Oscar BAZAN's residence ( during this investigation.

MANZO asked BAZAN if BAZAN still had "the other one" and BAZAN said yes but he barely had

enough for himself and added that today was his busy day. MANZO asked BAZAN if BAZAN wanted

MANZO to come "pick up some paper" and BAZAN said "yeah so you can go get those peanuts or

what?" MANZO said it did not matter. BAZAN then told MANZO that when MANZO brings "those

peanuts", BAZAN would give MANZO "some".

73.     Based on my training and experience, conversations with other experiences narcotics

investigators and knowledge of this investigation, I know the term "p" or "peanuts" is commonly used to

refer to pound quantities of narcotics therefore I believe when BAZAN used the term "peanuts",

BAZAN is referring to pound quantities of crystal methamphetamine. I believe when BAZAN described

the previous ones as being "plastic burnt", BAZAN was describing the poor quality of previously

purchased methamphetamine from MANZO. I know the term "paper" is commonly used to refer to

money. I believe when BAZAN told MANZO that BAZAN would give MANZO "some", BAZAN was

referring to giving MANZO money when MANZO brought BAZAN the four pounds of

methamphetamine BAZAN had requested. Based on the above information, I believe the telephone call

involved BAZAN asking MANZO to obtain four pounds of crystal methamphetamine for BAZAN.

74.     Later that night, agents intercepted multiple text messages between BAZAN (TT19) and

"Janet", a known crystal methamphetamine customer[20] of BAZAN.  "Janet" asked BAZAN if  BAZAN

had "got new stuff" and BAZAN said "No sorry".

75.     On September 2, 2017 at approximately 8:34 AM, "Janet" sent BAZAN (TT19) the

following text message "still nada" (still nothing).

76.     On September 2, 2017, at approximately 1:43 PM, BAZAN (TT19) placed an outgoing

call to During the all, BAZAN asked MANZO if MANZO could get "one" just as soon as MANZO can.

MANZO said he just had to wake up, get ready and then leave. BAZAN told MANZO that this one

would be for Phil, BAZAN's boy and BAZAN would be ready today or tomorrow but this one would be

like that. MANZO acknowledged. BAZAN asked about the other ones. MANZO said he would get them

---

[20] As mentioned above, agents seized two ounces of crystal methamphetamine on August 31,
2017 from Martin MONTOYA. The methamphetamine was obtained from BAZAN and the deal was
coordinated between BAZAN and "Janet".

1  today and added that third party was not there yesterday.

2       77.     At approximately 2:03 PM, BAZAN (TT19) replied to "Janet's" and said "Ya mero"

3  (Almost).

4       78.     At approximately 2:36PM, the tracking device indicated that MANZO's Accord arrived

5  at 4761 E Byrd Ave, Fresno, California. At approximately 2:45 PM, the Accord departed the Byrd Ave

6  residence. At approximately 3:00 PM, the Accord arrived in the parking lot of Mariscos Costa Azul

7  restaurant, 4315 E McKinley Ave, Fresno, California. At approximately 4:00 PM, the Accord departed

8  the parking lot of Mariscos Costa Azul restaurant and travelled directly to **SUBJECT PREMISES 5.**

9       79.     At approximately 4:18 PM, the Accord arrived at **SUBJECT PREMISES 5**.  At

10  approximately 4:30 PM, the Accord departed **SUBJECT PREMISES 5**.

11       80.     According to Google Maps, the most direct route from Mariscos Costa Azul to

12  **SUBJECT PREMISES 5** is approximately 10.5 miles in a southwesterly direction.  The most direct

13  route from Mariscos Costa Azul to BAZAN's location at 2307 W. Michigan, Fresno CA is

14  approximately 5.5 miles directly west.  The most direct route from **SUBJECT PREMISES 5** to 2307

15  W. Michigan is approximately 11.4 miles.  I have monitored multiple conversations in which MANZO

16  expressed an aversion to driving narcotics around for more time than is necessary.  Additionally, based

17  on my training and experience, individuals engaged in narcotics trafficking attempt to take the most

18  direct route to the drop off location to minimize the chance of getting caught with the narcotics.  I

19  believe that MANZO picked up the methamphetamine at **SUBJECT PREMISES 5** and drove it directly

20  to 2307 W. Michigan.

21       81.     Right as MANZO was leaving **SUBJECT PREMISES 5**, at approximately 4:30 PM,

22  MANZO spoke with BAZAN on the phone (BAZAN (TT19) placed an outgoing call to MANZO

23  (TT36)).  During the call, MANZO asked BAZAN what's good. BAZAN replied right there waiting for

24  MANZO and asked MANZO what MANZO was doing. MANZO said fucking nothing and added he

25  would be there in 10 to have everything ready and repeated he would be there right now. BAZAN

26  replied all right. Both parties acknowledged.

27       82.     At approximately 4:45 PM, the Accord arrived at BAZAN's location at 2307 W.

28  Michigan. MANZO exited the driver door and walked toward the front door of the residence carrying a

1     large white plastic bag in MANZO's right hand. Based on how the bag swung back and forth, it

2     appeared to have several items inside.

3        83.     At approximately 4:51 PM, the passenger door of the Accord opened and an unknown

4     male exited the Accord. The male entered the driver door of the Accord and momentarily moved the

5     Accord out of BAZAN's driveway.

6        84.     At approximately 4:54 PM, MANZO exited the residence and walked towards the

7     Accord. MANZO was holding a small black colored plastic bag in MANZO's left hand. The Accord left

8     the area shortly after.

9        85.     At approximately 5:45 PM, BAZAN (TT19) sent "Janet" a text "I have new too finally".

10     Based on my training and experience and the previous conversation between BAZAN and "Janet", I

11     believe BAZAN was information "Janet" that BAZAN had obtained a new "batch" of crystal

12     methamphetamine which was of better quality.

13        86.     Based on the above conversations, my training and experience and knowledge of this

14     investigation I believe the white plastic bag that MANZO delivered to BAZAN contained multiple

15     pounds of crystal methamphetamine and the small black colored plastic bag MANZO carried away from

16     BAZAN's residence contained money. Based on the tracker data and the timing of the phone call from

17     MANZO to BAZAN which indicated MANZO would arrive at BAZAN's residence in two minutes,

18     along with the historical information for **SUBJECT PREMISES 5**, I believe MANZO obtained the

19     plastic bag with crystal methamphetamine from **SUBJECT PREMISES 5.** I also believe **SUBJECT**

20     **PREMISES 5** has been associated and continues to be associated with narcotics trafficking and is being

21     utilized to store narcotics.

22

23                                **IV.     OPINION**

24     87.   Drug distributors often utilize vehicles in which to transport and distribute controlled

25     substances and/or analogues to facilitate their distributing activities. Based on my training,

26     background, experience, conversations with other law enforcement officers, and the knowledge I have

27     gained through this investigation, I also know that distributors will also utilize vehicles as locations in

28     which to store controlled substances and/or analogues prior to distribution.

AFFIDAVIT                      24

88.     Individuals involved in manufacturing and/or distributing controlled substances will often conceal, store and transport controlled substances or materials used to manufacture controlled substances and/or analogues in vehicles under their control.  Often times, therefore, such individuals will have several vehicles located on their premises.  Some of these vehicles are often in various states of repair, ranging from total abandonment and non-drivable to brand new.  When checking with the Department of Motor Vehicles, agents and law enforcement officers will often find that such vehicles are registered in the name of other individuals.  This is often the result of such individual's attempts to insulate themselves should the vehicles be found containing drugs or other contraband.  Based on my training, background, experience, conversations with other law enforcement officers, and the knowledge I have gained through this investigation, I believe that searching vehicles present at the residences or places of business of such individuals and found to be under their control (as evidenced by possession of keys or paperwork indicating they have access to the vehicle) during the service of the search warrant may produce relevant evidence.  Likewise, as the individuals identified above appear to work primarily from home and are required to utilize their vehicles in order to travel to the various business locations, documents such as business documents, inventory lists, customer lists, sales information, profit information, sales tax information, business/corporate tax information, invoices, shipping labels, receipts, cancelled checks, bank records, supplier lists and other evidence of sales of an ongoing criminal conspiracy, may be found in the vehicles.

89.     Based on my training and experience, conversations with other experienced narcotics investigators, and knowledge of this investigation, I know that it is a common practice for narcotics traffickers/distributors to store narcotics and/or narcotics' paraphernalia inside of their residences.

90.     I believe there will be controlled substances and other evidence related to drug trafficking located at **SUBJECT PREMISES 1-5** (referred to collectively as **"THE SUBJECT PREMISES"**). Based on the surveillance and intercepted calls, I know several of the target subject utilized cell phones and may also utilize other electronic devices, such as computers and mobile computing devices, in furtherance of drug trafficking, as I know many drug traffickers do.  Even if controlled substances are not located at **THE SUBJECT PREMISES**, I believe other evidence of drug trafficking, including firearms, may be located at the location. This evidence includes scales, packaging material, notes, and

AFFIDAVIT                                           25

other items commonly used by drug dealers to facilitate their drug dealing business. Based on my training and experience, I am aware that drug dealers often keep these items where they sell their drugs. Additionally, I know from my training and experience that it is common for drug dealers to possess firearms to protect their drug supply and profits.  Drug dealers often earn substantial cash proceeds that they accumulate or convert to other assets, such as jewelry, vehicles, real estate, bank accounts, or other investments.  Records are often kept for drug dealing activities and/or the accumulation/transformation of drug proceeds.

**[Remainder of page intentionally left blank.]**

# V.    CONCLUSION

91.    The above facts set forth probable cause to believe that the items in Attachment B-1 through B-5 will be found in the location described in Attachment A-1 through A-5, and that the items will evidence violations of Title 21, United States Code, Sections 846, 841(a)(1), conspiracy to distribute and possess with intent to distribute methamphetamine, cocaine and marijuana and distribution and possession with intent to distribute methamphetamine, cocaine and marijuana.  I request that a search and seizure warrant be issued for 4188 N Cornelia Avenue, Fresno, California 93722, (**SUBJECT PREMISES 1**), 2488 10th Street, Apt 114, Sanger, California 93657 (**SUBJECT PREMISES 2**), 2536 N Habitat Avenue, Fresno, California 93706 (**SUBJECT PREMISES 3**), 4963 E. Garrett Avenue, Fresno, California 93725 (**SUBJECT PREMISES 4**), and 833/837 E Lincoln Avenue, Fresno, California 93725 (**SUBJECT PREMISES 5**).

Andres Varela
Special Agent, Homeland Security Investigations

Swore to and subscribed before me

This ___2 4___ day of October, 2017

ERICA P. GROSJEAN
UNITIED STATES MAGISTRATE JUDGE

Reviewed as to form and substance.

/s/ Kimberly A. Sanchez
KIMBERLY A. SANCHEZ
Assistant U.S. Attorney

AFFIDAVIT                                    27

SEALED COPY

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

ISSUED 

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| | ) | Case No. |
| 2536 S. Habitat Fresno, CA 93705 | ) | **1: 1 7 SW - 0 0 3 3 7   EPG** |
| | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated herein by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated herein by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ November 3, 2017 _____ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  _Oct 24, 2017   at 1:40pm_

_____
Judge's signature

City and state:      _Fresno, California_

_Erica P. Grosjean, U.S. Magistrate Judge_
*Printed name and title*

| **Return** | | |
| --- | --- | --- |
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
| --- |

| Inventory of the property taken and name of any person(s) seized: |
| --- |

| **Certification** |
| --- |

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                                          Date

## ATTACHMENT A-3

The **SUBJECT PREMISES 3** to be searched pursuant to the requested search warrant is described as follow:

### The residence located at 2536 S. Habitat Avenue, Fresno, CA

The residence identified as 2536 S. Habitat Avenue, Fresno, CA, is described as a single family, single story residence the residence is cream in color with blue trim. The front door has a white security screen on it which faces east.

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.

ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT B

Items to be Seized:

Items tending to establish and document the transportation, distribution and/or possession with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and 846:

1.  Controlled substances, in particular crystal methamphetamine , and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

2.  Evidence of potential co-conspirators, including books, records, correspondence, narcotic customers lists, narcotic suppliers lists, ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts, letters and memoranda of agreements between potential co-conspirators, formulas, receipts, phone records, phone books, address books, notations and other papers, and any files relating to the transporting, ordering, purchasing, or distributing of controlled substances.

3.  Indicia of occupancy, residency, and/or ownership of the previously described property, premises, or vehicles, and any other property, premises, or vehicles, including utility and telephone bills, canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, envelopes, registration, receipts, and keys which tend to show the identities of the occupants, residents, and/or owners.

4.  Photographs and/or videotapes, in particular photographs and/or videotapes of potential co-conspirators and their criminal associates, assets, and/or controlled substances, along with personal address lists, and other documents with the names and telephone numbers

of potential co-conspirators.

5.      Evidence of records relating to the use of and accumulation of proceeds derived from the

sale of marijuana or any other illegal controlled substances, as well as the acquisition of

property obtained from drug proceeds, and items evidencing the obtaining, secreting,

transfer, concealment, and/or expenditure of money obtained from drug sales, including

precious metals, jewelry, records of large purchases, receipts, keys and other items

tending to establish dominion and control of the location, canceled checks, bank records,

credit card records, wire transfers, wire transfer receipts, cashier's checks, cashier's

check receipts, addressed mail, express delivery receipts/envelopes, utility company

receipts, rent receipts, income tax returns, money drafts, money orders, and their receipts.

Other financial records including expenses incurred in obtaining the equipment and items

necessary for the transportation and/or distribution of controlled substances, income

derived from the sales of controlled substances, as well as records of legitimate income or

lack thereof, and general living expenses.

6.      Financial records of persons in control of the property, premises, or vehicles, including

bank statements, bank receipts, passbooks, bank checks, money market or similar

accounts, money drafts, letters of credit, payroll documents, employer information,

income and expense records, Federal and State income tax returns, money orders,

cashier's checks, loan applications, credit card records, safe deposit box and records,

acquisitions, notes, and records reflecting vehicles, aircraft or vessels owned, purchased,

. sold or leased.

7.      Devices used to communicate with other individuals involved in the transportation and/or

distribution of marijuana or any other controlled substance, including cellular telephones, mobile telephones, satellite telephones, phone answering machines, telephone answering machine tapes, two-way radios, beepers or pagers, computers, two-way digital pagers, and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts or literature describing the same. The cellular telephones, satellite telephones, pagers, personal telephone and address books, papers, and/or other items reflecting names, addresses and/or telephone numbers of associates in narcotics activities.

8. Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

9. United States currency in excess of $2,000 and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

10. Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

11. Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors,

razor blades, plastic bags, heat-sealing devices and cutting agents.

12. Documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, and telephone bills.

13. Firearms, ammunition, silencers, and other dangerous weapons.

SEALED

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California



| In the Matter of the Search of | ) | |
|---|---|---|
| | ) | |
| | ) | Case No. |
| 2488 10th Street Sanger, CA 93657 | ) | |
| | ) | 1: 17 SW - 0 0 3 3 7   EPG |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated herein by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated herein by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____November 3, 2017_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    10/24/17   at   1:40 pm                      _____
                                                                         *Judge's signature*

City and state:      Fresno, California                       Erica P. Grosjean, U.S. Magistrate Judge
                                                                    *Printed name and title*

| Return |
|---|

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

| _____ | _____ |
|---|---|
| Signature of Judge | Date |

## ATTACHMENT A-2

The **SUBJECT PREMISES 2** to be searched pursuant to the requested search warrant is described as follow:

### The residence Located at 2488 10TH Street #114 Sanger, CA

The residence identified as 2488 10TH $^{Apt}$ 114 Sanger CA, is described as a two story apartment the residence is Tan in color with red trim.  The front door is red in color and the numbers 144 are in black next to the door.

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.


ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT B

Items to be Seized:

Items tending to establish and document the transportation, distribution and/or possession

with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and 846:

1.    Controlled substances, in particular crystal methamphetamine , and the items commonly

       associated with the packaging and sales of controlled substances, including commercial

       plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing

       devices.

2.    Evidence of potential co-conspirators, including books, records, correspondence, narcotic

       customers lists, narcotic suppliers lists, ledgers, logs, journals, accounts payable and

       receivable, pay-owe sheets, contracts, letters and memoranda of agreements between

       potential co-conspirators, formulas, receipts, phone records, phone books, address books,

       notations and other papers, and any files relating to the transporting, ordering,

       purchasing, or distributing of controlled substances.

3.    Indicia of occupancy, residency, and/or ownership of the previously described property,

       premises, or vehicles, and any other property, premises, or vehicles, including utility and

       telephone bills, canceled mail, deeds, leases, rental agreements, photographs, personal

       telephone books, diaries, envelopes, registration, receipts, and keys which tend to show

       the identities of the occupants, residents, and/or owners.

4.    Photographs and/or videotapes, in particular photographs and/or videotapes of potential

       co-conspirators and their criminal associates, assets, and/or controlled substances, along

       with personal address lists, and other documents with the names and telephone numbers

of potential co-conspirators.

5.     Evidence of records relating to the use of and accumulation of proceeds derived from the sale of marijuana or any other illegal controlled substances, as well as the acquisition of property obtained from drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money obtained from drug sales, including precious metals, jewelry, records of large purchases, receipts, keys and other items tending to establish dominion and control of the location, canceled checks, bank records, credit card records, wire transfers, wire transfer receipts, cashier's checks, cashier's check receipts, addressed mail, express delivery receipts/envelopes, utility company receipts, rent receipts, income tax returns, money drafts, money orders, and their receipts. Other financial records including expenses incurred in obtaining the equipment and items necessary for the transportation and/or distribution of controlled substances, income derived from the sales of controlled substances, as well as records of legitimate income or lack thereof, and general living expenses.

6.     Financial records of persons in control of the property, premises, or vehicles, including bank statements, bank receipts, passbooks, bank checks, money market or similar accounts, money drafts, letters of credit, payroll documents, employer information, income and expense records, Federal and State income tax returns, money orders, cashier's checks, loan applications, credit card records, safe deposit box and records, acquisitions, notes, and records reflecting vehicles, aircraft or vessels owned, purchased, sold or leased.

7.     Devices used to communicate with other individuals involved in the transportation and/or

distribution of marijuana or any other controlled substance, including cellular telephones, mobile telephones, satellite telephones, phone answering machines, telephone answering machine tapes, two-way radios, beepers or pagers, computers, two-way digital pagers, and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts or literature describing the same. The cellular telephones, satellite telephones, pagers, personal telephone and address books, papers, and/or other items reflecting names, addresses and/or telephone numbers of associates in narcotics activities.

8. Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

9. United States currency in excess of $2,000 and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

10. Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

11. Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors,

razor blades, plastic bags, heat-sealing devices and cutting agents.

12.  Documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, and telephone bills.

13.  Firearms, ammunition, silencers, and other dangerous weapons.

SEALED COPY ISSUED

## UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| 4188 N. Cornelia Fresno, CA 93722 | ) Case No. 1: 1 7 SW - 0 0 3 3 7  EPG |
| | ) |
| | ) |
| | ) |

### SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the      Eastern      District of      California (*identify the person or describe the property to be searched and give its location*):

**SEE ATTACHMENT A, attached hereto and incorporated herein by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated herein by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before      November 3, 2017      *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐  Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐   for ____ days *(not to exceed 30)* ☐  until, the facts justifying, the later specific date of _____.

Date and time issued:      Oct 24, 2017 at 1:40 pm      _____
                                                                                          *Judge's signature*

City and state:      Fresno, California      _____      Erica P. Grosjean, U.S. Magistrate Judge
                                                                                                              *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification | | |
|---|---|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                 Date

## ATTACHMENT A-1

The **SUBJECT PREMISES 1** to be searched pursuant to the requested search warrant is described as follow:

### The residence Located at 4188 N Cornelia Avenue, Fresno CA

The residence identified as 4188 N. Cornelia Avenue Fresno CA, is described as a single story duplex located on the east side of  N. Cornelia The residence is Tan in color with brown trim.  The front door is brown in color which faces west.

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.

ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT B

Items to be Seized:

Items tending to establish and document the transportation, distribution and/or possession with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and 846:

1. Controlled substances, in particular crystal methamphetamine , and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

2. Evidence of potential co-conspirators, including books, records, correspondence, narcotic customers lists, narcotic suppliers lists, ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts, letters and memoranda of agreements between potential co-conspirators, formulas, receipts, phone records, phone books, address books, notations and other papers, and any files relating to the transporting, ordering, purchasing, or distributing of controlled substances.

3. Indicia of occupancy, residency, and/or ownership of the previously described property, premises, or vehicles, and any other property, premises, or vehicles, including utility and telephone bills, canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, envelopes, registration, receipts, and keys which tend to show the identities of the occupants, residents, and/or owners.

4. Photographs and/or videotapes, in particular photographs and/or videotapes of potential co-conspirators and their criminal associates, assets, and/or controlled substances, along with personal address lists, and other documents with the names and telephone numbers

of potential co-conspirators.

5.   Evidence of records relating to the use of and accumulation of proceeds derived from the

sale of marijuana or any other illegal controlled substances, as well as the acquisition of

property obtained from drug proceeds, and items evidencing the obtaining, secreting,

transfer, concealment, and/or expenditure of money obtained from drug sales, including

precious metals, jewelry, records of large purchases, receipts, keys and other items

tending to establish dominion and control of the location, canceled checks, bank records,

credit card records, wire transfers, wire transfer receipts, cashier's checks, cashier's

check receipts, addressed mail, express delivery receipts/envelopes, utility company

receipts, rent receipts, income tax returns, money drafts, money orders, and their receipts.

Other financial records including expenses incurred in obtaining the equipment and items

necessary for the transportation and/or distribution of controlled substances, income

derived from the sales of controlled substances, as well as records of legitimate income or

lack thereof, and general living expenses.

6.   Financial records of persons in control of the property, premises, or vehicles, including

bank statements, bank receipts, passbooks, bank checks, money market or similar

accounts, money drafts, letters of credit, payroll documents, employer information,

income and expense records, Federal and State income tax returns, money orders,

cashier's checks, loan applications, credit card records, safe deposit box and records,

acquisitions, notes, and records reflecting vehicles, aircraft or vessels owned, purchased,

sold or leased.

7.   Devices used to communicate with other individuals involved in the transportation and/or

distribution of marijuana or any other controlled substance, including cellular telephones, mobile telephones, satellite telephones, phone answering machines, telephone answering machine tapes, two-way radios, beepers or pagers, computers, two-way digital pagers, and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts or literature describing the same.  The cellular telephones, satellite telephones, pagers, personal telephone and address books, papers, and/or other items reflecting names, addresses and/or telephone numbers of associates in narcotics activities.

8.  Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

9.  United States currency in excess of $2,000 and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

10.  Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

11.  Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors,

razor blades, plastic bags, heat-sealing devices and cutting agents.

12.   Documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, and telephone bills.

13.   Firearms, ammunition, silencers, and other dangerous weapons.



COPY
SEALED
ISSUED

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| 833/837 E. Lincoln Ave., Fresno CA  93725 | )  Case No. |
| | ) |
| | ) |

Case No.

**1: 1 7 SW - 0 0 3 3 7   EPG**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated herein by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated herein by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ November 3, 2017 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐   for _____ days *(not to exceed 30)* ☐   until, the facts justifying, the later specific date of _____ .

Date and time issued:   Oct 24, 2017 at 1:40 pm _____          _____
                                                                                                        *Judge's signature*

City and state:      Fresno, California _____          Erica P. Grosjean, U.S. Magistrate Judge
                                                                                                *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____       _____
Signature of Judge                        Date

## ATTACHMENT A-5

The **SUBJECT PREMISES 5** to be searched pursuant to the requested search warrant is described as follow:

### The residence located at 833/837 E Lincoln Avenue, Fresno, CA

The residence identified as 833/837 E Lincoln Avenue, Fresno, CA, is described as a multi-structure property located on the south side of E Lincoln Avenue between S East Avenue and S Cherry Avenue in Fresno, California. A black-colored iron fence with two gates surrounds the north side of the property. The premises consists of two residences, "833", which is the northernmost structure on the property. "833" is a single story residence comprised of yellow-colored stucco with dark brown trim and a red colored tile roof. "833" has an attached white colored two-car garage to the east of the front door. The front door of "833" is brown colored and faces north. "837" is the southernmost structure on the property. "837" is a single story residence, which is green colored with white trim with a gray colored composite roof. There is a long drive way on the west side of the property which leads to the rear residence, "837"". At the end of the driveway, is a carport, which is to the west of "837". There are two mailboxes outside the front fence/gate of the premises, labeled "833" and "837".

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.

ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT B

Items to be Seized:

Items tending to establish and document the transportation, distribution and/or possession with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and 846:

1.  Controlled substances, in particular crystal methamphetamine , and the items commonly associated with the packaging and sales of controlled substances, including commercial plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing devices.

2.  Evidence of potential co-conspirators, including books, records, correspondence, narcotic customers lists, narcotic suppliers lists, ledgers, logs, journals, accounts payable and receivable, pay-owe sheets, contracts, letters and memoranda of agreements between potential co-conspirators, formulas, receipts, phone records, phone books, address books, notations and other papers, and any files relating to the transporting, ordering, purchasing, or distributing of controlled substances.

3.  Indicia of occupancy, residency, and/or ownership of the previously described property, premises, or vehicles, and any other property, premises, or vehicles, including utility and telephone bills, canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, envelopes, registration, receipts, and keys which tend to show the identities of the occupants, residents, and/or owners.

4.  Photographs and/or videotapes, in particular photographs and/or videotapes of potential co-conspirators and their criminal associates, assets, and/or controlled substances, along with personal address lists, and other documents with the names and telephone numbers

of potential co-conspirators.

5.    Evidence of records relating to the use of and accumulation of proceeds derived from the sale of marijuana or any other illegal controlled substances, as well as the acquisition of property obtained from drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money obtained from drug sales, including precious metals, jewelry, records of large purchases, receipts, keys and other items tending to establish dominion and control of the location, canceled checks, bank records, credit card records, wire transfers, wire transfer receipts, cashier's checks, cashier's check receipts, addressed mail, express delivery receipts/envelopes, utility company receipts, rent receipts, income tax returns, money drafts, money orders, and their receipts. Other financial records including expenses incurred in obtaining the equipment and items necessary for the transportation and/or distribution of controlled substances, income derived from the sales of controlled substances, as well as records of legitimate income or lack thereof, and general living expenses.

6.    Financial records of persons in control of the property, premises, or vehicles, including bank statements, bank receipts, passbooks, bank checks, money market or similar accounts, money drafts, letters of credit, payroll documents, employer information, income and expense records, Federal and State income tax returns, money orders, cashier's checks, loan applications, credit card records, safe deposit box and records, acquisitions, notes, and records reflecting vehicles, aircraft or vessels owned, purchased, sold or leased.

7.    Devices used to communicate with other individuals involved in the transportation and/or

distribution of marijuana or any other controlled substance, including cellular telephones, mobile telephones, satellite telephones, phone answering machines, telephone answering machine tapes, two-way radios, beepers or pagers, computers, two-way digital pagers, and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts or literature describing the same. The cellular telephones, satellite telephones, pagers, personal telephone and address books, papers, and/or other items reflecting names, addresses and/or telephone numbers of associates in narcotics activities.

8.   Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

9.   United States currency in excess of $2,000 and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

10.  Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

11.  Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors,

razor blades, plastic bags, heat-sealing devices and cutting agents.

12. Documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, and telephone bills.

13. Firearms, ammunition, silencers, and other dangerous weapons.

SEALED COPY

ISSUED



# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| In the Matter of the Search of | ) | |
|---|---|---|
| | ) | Case No. |
| 4963 E. Garrett Avenue Fresno, CA 93705 | ) | 1: 17 SW - 0 0 3 3 7   EPG |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated herein by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated herein by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____November 3, 2017_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     <u>Oct 24, 2017 at 1:40 pm</u>          _____
                                                                                                            *Judge's signature*

City and state:      Fresno, California _____          Erica P. Grosjean, U.S. Magistrate Judge
                                                                                                            *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____     _____
Signature of Judge                                       Date

## ATTACHMENT A-4

The **SUBJECT PREMISES 4** to be searched pursuant to the requested search warrant is described as follow:


### The residence located at 4963 E. Garrett Avenue, Fresno, CA

The residence identified as 4963 E. Garrett Avenue Fresno CA, is described as a single family, single story residence located on the north side of Garrett the residence is brown in color with a gray composite roof. The front door has a tan security screen on it which faces south.

The search is to include:

ANY AND ALL locked or closed rooms, closets, safes, cabinets, hidden compartments or storage facilities, garages, sheds and outbuildings on the property.

ANY AND ALL vehicles owned, leased or rented by the occupants therein that are parked on the subject premises at the time of the service of the search warrants.

## ATTACHMENT B

Items to be Seized:

Items tending to establish and document the transportation, distribution and/or possession

with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1) and 846:

1.    Controlled substances, in particular crystal methamphetamine , and the items commonly

associated with the packaging and sales of controlled substances, including commercial

plastic wrap, plastic bags or zip lock bags, film canisters, scales, or other weighing

devices.

2.    Evidence of potential co-conspirators, including books, records, correspondence, narcotic

customers lists, narcotic suppliers lists, ledgers, logs, journals, accounts payable and

receivable, pay-owe sheets, contracts, letters and memoranda of agreements between

potential co-conspirators, formulas, receipts, phone records, phone books, address books,

notations and other papers, and any files relating to the transporting, ordering,

purchasing, or distributing of controlled substances.

3.    Indicia of occupancy, residency, and/or ownership of the previously described property,

premises, or vehicles, and any other property, premises, or vehicles, including utility and

telephone bills, canceled mail, deeds, leases, rental agreements, photographs, personal

telephone books, diaries, envelopes, registration, receipts, and keys which tend to show

the identities of the occupants, residents, and/or owners.

4.    Photographs and/or videotapes, in particular photographs and/or videotapes of potential

co-conspirators and their criminal associates, assets, and/or controlled substances, along

with personal address lists, and other documents with the names and telephone numbers

of potential co-conspirators.

5.    Evidence of records relating to the use of and accumulation of proceeds derived from the sale of marijuana or any other illegal controlled substances, as well as the acquisition of property obtained from drug proceeds, and items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money obtained from drug sales, including precious metals, jewelry, records of large purchases, receipts, keys and other items tending to establish dominion and control of the location, canceled checks, bank records, credit card records, wire transfers, wire transfer receipts, cashier's checks, cashier's check receipts, addressed mail, express delivery receipts/envelopes, utility company receipts, rent receipts, income tax returns, money drafts, money orders, and their receipts. Other financial records including expenses incurred in obtaining the equipment and items necessary for the transportation and/or distribution of controlled substances, income derived from the sales of controlled substances, as well as records of legitimate income or lack thereof, and general living expenses.

6.    Financial records of persons in control of the property, premises, or vehicles, including bank statements, bank receipts, passbooks, bank checks, money market or similar accounts, money drafts, letters of credit, payroll documents, employer information, income and expense records, Federal and State income tax returns, money orders, cashier's checks, loan applications, credit card records, safe deposit box and records, acquisitions, notes, and records reflecting vehicles, aircraft or vessels owned, purchased, sold or leased.

7.    Devices used to communicate with other individuals involved in the transportation and/or

distribution of marijuana or any other controlled substance, including cellular telephones, mobile telephones, satellite telephones, phone answering machines, telephone answering machine tapes, two-way radios, beepers or pagers, computers, two-way digital pagers, and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts or literature describing the same. The cellular telephones, satellite telephones, pagers, personal telephone and address books, papers, and/or other items reflecting names, addresses and/or telephone numbers of associates in narcotics activities.

8. Money counting machines, money wrappers, and/or work sheets, tally sheets, or ledger sheets reflecting or accounting for money received, disbursed, or exchanged.

9. United States currency in excess of $2,000 and records relating to income derived from the transportation, sales, and distribution of controlled substances and expenditures of money and wealth, for example, money orders, wire transfers, cashier's checks and receipts, passbooks, checkbooks, check registers, securities, precious metals, jewelry, antique or modern automobiles, bank statements and other financial instruments, including stocks or bonds in amounts indicative of the proceeds of illicit narcotic trafficking.

10. Storage units and containers, such as floor safes, wall safes, upright safes (also known as gun safes), lock boxes, and other self-contained locked enclosures.

11. Paraphernalia for packaging, processing, cutting, weighing, and distributing controlled substances, such as scissors, scales, funnels, sifters, grinders, glass panes and mirrors,

razor blades, plastic bags, heat-sealing devices and cutting agents.

12.     Documents indicating travel in interstate and foreign commerce, such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, and telephone bills.

13.     Firearms, ammunition, silencers, and other dangerous weapons.